**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
U.S. COURTHOUSE
402 E. STATE STREET
TRENTON, NEW JERSEY 08608

Hon. Michael B. Kaplan  609-989-0478
United States Bankruptcy Judge  609-989-2259 Fax

February 9, 2011

Harry M. Gutfleish, Esq.
Forman Holt Eliades & Ravin LLC
80 Route 4 East, Suite 290
Paramus, New Jersey 07652
Special Counsel for Catherine E. Youngman, Trustee

A. Ross Pearlson, Esq.
Joshua Howley, Esq.
Sills Cummis & Gross P.C.
One Riverfront Plaza
Newark, New Jersey 07102
Attorneys for Defendants Yorkville Advisors, LLC, Stone Street Advisors, LLC and Matthew Beckman

> Re: Catherine E. Youngman, Chapter 7 Trustee of Headliners Entertainment Group, Inc. v. YA Global Investments, L.P., Yorkville Advisors, LLC, Stone Street Advisors, LLC, and Matthew Beckman
>
> Ad. Pro. Nos.: 08-2976, 09-1287

Counselors:

The Court has held trial in the captioned adversary proceedings and has reviewed the evidence, together with pre-trial submissions.[1] The Court issues the following ruling:

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, referring

---

[1] As a procedural note, at the conclusion of trial, the Court requested that both parties submit proposed findings of fact and conclusions of law. At a conference call initiated at the Court's request, the Court sought an agreement of the parties to dispense with the Court's obligation, under Fed. R. Bankr. P. 7052, in an effort to curtail mounting litigation costs. While counsel for the Trustee was so inclined, counsel for Defendants indicated in correspondence to the Court that it wished to proceed as initially discussed. Inasmuch as the Court is entering judgment in favor of Defendants, the Court deems it prudent to do so in this fashion as to avoid wasting judicial resources and increasing the time and costs for the parties. The Court is prepared to rule based on its review of the parties pre-trial submissions, trial exhibits, evidence adduced at trial, and witness testimony.

all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (H) and (O). Venue is proper in this Court pursuant to 28 U.S.C. § 1408 and 28 U.S.C. § 1409. The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.

On October 8, 2003, Headliners Entertainment Group, Inc. ("Headliners") f/k/a Rascals International, Inc. ("Rascals") (collectively, "the Debtor"), a publicly-traded company, and Cornell Capital Partners, L.P. ("Cornell"), a limited partnership private equity fund, executed an Equity Line of Credit Agreement ("ELCA") whereby Cornell would provide the Debtor with cash in exchange for shares of the Debtor's common stock, which Cornell would then sell on the open market.[2] After execution of the ELCA, the Debtor inquired as to whether an alternative borrowing structure would be available to allow the Debtor quicker access to increased funds. In response, Cornell offered, and the Debtor agreed, that Cornell would provide access to additional funds in exchange for promissory notes, secured by the ELCA, which the Debtor would execute for the benefit of Cornell (the "Promissory Note Structure"). The Promissory Note Structure provided less security to Cornell than it had in connection with the initial transactions under the ELCA because Cornell was extending the Debtor substantially more credit in a shorter time frame, while Cornell bore the enhanced risk of the Debtor's default.

On January 14, 2004, as a condition of entering into the anticipated Promissory Note Structure, the Debtor executed a Consulting Services Agreement ("CSA") with Stone Street Advisors, LLC ("Stone Street" or "Defendant(s)"), a related entity of Cornell.[3] The CSA provides, in relevant part, that "[f]rom time to time during the term of this Agreement, Stone

---

[2] The principal investment firm is now known as YA Global Investments, L.P. For purposes of this opinion, however, the Court will refer to the investment firm as Cornell as the subject transactions were entered into with Cornell.

[3] Cornell, Yorkville and Stone Street maintained common ownership and operated from the same office at 101 Hudson Street, Hudson City, New Jersey. Moreover, at the time of the transactions at issue, Stone Street had no members who were not, at the same time, members of Yorkville.

2

Street shall provide such advisory services to [the Debtor] with regard to various types of financial arrangements, including, equity line of credit financing, debt financing, other forms of direct investment in [the Debtor] and general corporate matters." In return for those services, the Debtor agreed that it would pay Stone Street a fee "in an amount as agreed upon, at such time, by [the Debtor] and Stone Street." Defendant additionally argues that the fee it received also incorporated the "cost of capital" or "cost of doing business" – i.e. enhanced fees associated with the risk of allowing Debtor to access more funds than were available under the ELCA.

Between January 14, 2004 and March 17, 2004, the Debtor and Cornell entered into a series of arms-length transactions whereunder the Debtor received over $6.7 million, which were memorialized by six promissory notes that the Debtor executed in Cornell's favor. In connection with the $6.7 million funding that Cornell provided to the Debtor, Stone Street received six payments totaling $313,215. The Trustee now seeks to recover the six payments to Stone Street, bottomed on the assertion that the Debtor was not provided with reasonably equivalent value in exchange for the $313,215 paid to Stone Street.[4]

The Court held trial on December 15, 2010, December 16, 2010, and January 20, 2011. Trial was limited to the issues of (1) whether Stone Street rendered any services on behalf of the Debtor; and (2) whether the Debtor received reasonably equivalent value in exchange for the Stone Street transfers. For the reasons set forth herein, the Court finds that the Trustee has failed to meet her burden to establish that the services and capital the Debtor received were not roughly

---

[4] Yorkville Advisors, LLC ("Yorkville" or "Defendant(s)") is also a Defendant in this adversary proceeding. Yorkville, Cornell's investment manager, was responsible for overseeing and managing Cornell's investments in connection with the transactions at issue. In consideration for its services, Yorkville was paid 2% of the assets of Cornell plus 20% of profits earned for Cornell. On September 29, 2009, this Court entered an order granting the parties proposed stipulation consolidating these adversary proceedings, as the proceedings present nearly identical factual allegations and legal issues. The Stipulation was submitted with the consent of counsel for all parties. Dkt. ¶17. Now, Trustee seeks payment from Yorkville under a corporate veil piercing theory to the extent the Court finds Stone Street is the recipient of fraudulent transfers that must be turned over to the bankruptcy estate. The question of Yorkville's liability will be discussed below.

equivalent in value to the fees paid to Stone Street. Accordingly, the relief sought by the Trustee on all counts in her complaint is denied.

### I. Parol Evidence Rule Objection

In her pre-trial submissions and at trial, the Trustee objected to Defendants' introduction of testimony supplementing the promissory note agreements at issue on the grounds that such testimony was barred by the parol evidence rule. In general, the parol evidence rule prohibits the introduction of evidence that tends to alter an integrated written document. Conway v. 287 Corporate Center Associates, 187 N.J. 259 (2006), 901 A.2d 341; Restatement (Second) of Contracts § 213 (1981). The parol evidence rule is a rule of substantive law, not a rule of evidence. Restatement (Second) of Contracts § 213 cmt. a. "New Jersey takes a more expansive view that parol evidence may be considered to aid in the determination of the meaning and intent of the contract terms." In re Steel Wheels Transport, LLC, 2009 WL 1025395 (Bankr. D.N.J. 2009). Therefore, a court has leniency to admit parol evidence so long as said evidence does not "contradict or vary [the contract] terms." Id.; See Restatement (Second) of Contracts § 214 ("Agreements and negotiations prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish . . . the meaning of the writing, whether or not integrated.") In sum, the New Jersey Supreme Court explained that

> [New Jersey] permit[s] a broad use of extrinsic evidence to achieve the ultimate goal of discovering the intent of the parties. Extrinsic evidence may be used to uncover the true meaning of contractual terms. It is only after the meaning of the contract is discerned that the parol evidence rule comes into play to prohibit the introduction of extrinsic evidence to vary the terms of the contract.

Conway, 187 N.J. at 270 (citing Atl. N. Airlines v. Schwimmer, 12 N.J. 293, 304, 96 A.2d 652 (1953)).

The Court finds that testimony offered by Defendants at trial supplementing the promissory note agreements is admissible because the agreement – specifically, the integration

4

clause itself – is ambiguous on its face. Each one of the loan documents at issue contains an integration clause similar to the following provision set forth in the March 2005 Note:

> **Entire Agreement.** This Note (including any recitals hereto) set [*sic*] forth the entire understanding of the parties with respect to the **subject matter hereof**, and shall not be modified or affected by any offer, proposal, statement or representation, oral or written, made by or for any party in connection with the negotiation of the terms hereof, and may be modified only be instruments signed by all of the parties hereto. [Emphasis added]

The Court finds that the "subject matter hereof" language contained in the integration clause is both broad and vague. It is unclear from the language of the clause whether "subject matter hereof" applies strictly to the loan documents or if it also encompasses all related documents including, but not limited to, the CSA executed between Stone Street and the Debtor. As noted above, parol evidence is admissible despite the existence of an integration clause. In re Steel Wheels Transport, LLC, 2009 WL at *8 ("[An] integration clause alone does not change the determination of whether ambiguous language exists."). Further, the Court finds ambiguity with respect to the parties' intent underlying the consensual compensation scheme in place in the series of loan transactions. Accordingly, the Court overrules the Trustee's parol evidence rule objection and relies on the witnesses' testimony and supporting documentation regarding the services provided by Stone Street to the Debtor, and the corresponding fees paid to Stone Street, to the extent it deems appropriate.

    II.    **Fraudulent Transfer Action Under 11 U.S.C. § 548(a)(1)(B)**

The threshold question for the Court to decide is whether the Trustee has met her burden in proving that the payments made by the Debtor to Stone Street constitute a fraudulent transfer under § 548(a)(1)(B).[5] The elements of a § 548(a)(1)(B) claim are as follows: (1) the debtor had

---

[5] The Trustee also seeks relief under the New Jersey Uniform Fraudulent Transfer Act. N.J.S.A. 25:2-25(b); N.J.S.A. 25:2-27(a). Courts analyzing N.J.S.A. 25:2-25(b) and N.J.S.A. 25:2-27(a) employ almost the identical analysis as is used for claims asserted under 11 U.S.C. § 548(b). In Re Markson Rosenthal & Co., Inc., 2009 WL

an interest in property; (2) a transfer of that interest occurred within one year of the bankruptcy filing; (3) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer; and (4) the transfer resulted in no value for the debtor or the value received was not "reasonably equivalent" to the value of the relinquished property interest. § 548(a)(1)(B); In re Fruehauf Trailer Corp., 444 F.3d 203, 211 (3d Cir. 2006). The burden is on the party seeking recovery of a fraudulent conveyance to prove each of the above elements. In re Fruehauf Trailer Corp., 444 F.3d at 215 ("The party bringing the fraudulent conveyance action bears the burden of proving the elements [of a fraudulent conveyance claim] by a preponderance of the evidence"); Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 648 (3d Cir. 1991).

In order to determine whether the Debtor received reasonably equivalent value for the Stone Street transfers, the Court must make two distinct inquiries: (1) whether the Debtor received any value at all; and, (2) whether the value received was reasonably equivalent to what the Debtor gave up. Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L. (In re R.M.L. Inc.), 92 F.3d 139, 149 (3d Cir. 1996). For purposes of § 548, value is defined as "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor[.]" 11 U.S.C. § 548(d)(2)(A). To determine whether a debtor received any value at all, a court must consider whether, "based on the circumstances that existed at the time" of the transfer, it was "legitimate and reasonable" to expect some value accruing to the debtor. In re Fruehauf Trailer Corp., 444 F.3d at 212 (citing In re R.M.L., 92 F.3d at 152). Next, to determine whether the debtor got roughly the value it gave, the court must look to the "totality of the circumstances," including (1) the "fair market value" of the benefit received as a result of the transfer, (2) "the

---

3763048 *10 (Bankr. D.N.J. 2009). Therefore, the Court will not undertake a separate analysis of the state law claims.

existence of an arm's-length relationship between the debtor and the transferee," and (3) the transferee's good faith.  Id. at 213 (citing In re R.M.L. 92 F.3d at 148-49, 153).

Under the undisputed facts in the record, the Court finds that the Debtor received reasonably equivalent value in exchange for the transfers received by Stone Street.  First, the Court is persuaded that Stone Street provided services and financial advice of value to the Debtor in connection with the Promissory Note Structure and as contemplated in the CSA.  Specifically, Mr. Beckman, principal advisor on the transaction and member of Stone Street, has testified that Stone Street monitored and restructured the debt, analyzed the risk involved, and assessed whether the Debtor's payments could be "pushed back."  Moreover, Stone Street advised the Debtor on an ongoing basis concerning whether the market could absorb more of its stock and liquidity issues, whether trading of the stock needed to be suspended, and analyzed how much money the Debtor could raise and reasonably expect to use the public market for its stock to pay down its debt.

Second, the Court agrees with Defendants that the Debtor's ability to immediately access several million dollars was of considerable value.  See Mellon Bank, N.A., 945 F.2d at 647 ("The ability to borrow money has considerable value in the commercial world.").  As noted above, Debtor sought quicker access to additional funds in order to continue operating its business.  Cornell structured the promissory notes in such a way to insure that the Debtor received sufficient capital to operate, at greater risk to itself.  Debtor was aware of the shift in the financial structure of the transaction, the purpose for said shift, and the attendant risks to which it exposed Defendants.  Nonetheless, Debtor willingly agreed to this arrangement.  In fact, Eduardo Rodriguez, the Debtor's chief executive officer, conceded in his deposition that he personally approved or authorized every payment that was ever made to Stone Street and understood that

the Stone Street fee was, in part, a "cost of capital" or "cost of doing business."[6] In sum, the Court finds the services and capital provided to the Debtor by the Defendants is reasonably equivalent in value to the $313,125 Stone Street received.[7]

In light of the above discussion, the Court will enter judgment dismissing the Complaint, in its entirety, without an award of costs and/or fees to either party.

Honorable Michael B. Kaplan
United States Bankruptcy Judge

---

[6] The Court notes that it is of no consequence that a "cost of capital" or "cost of business" fee was not provided for in the Consulting Services Agreement. The Court has already ruled that it would review and consider supplemental testimony and submissions in determining whether Stone Street provided value to the Debtor.

[7] Moreover, as the Court finds that the payment of fees to Stone Street by the Debtor does not constitute a fraudulent transfer, no discussion of Yorkville's liability under a corporate veil piercing theory is necessary.